# EXHIBIT 1

Jeffrey L. Smoot, WSBA #39335
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 1700
Seattle, WA  98101
(206) 623-3427

Judge Timothy W. Dore
Chapter 11

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE DIVISION

In re:

WASHINGTON FIRST FINANCIAL
GROUP, INC.,

                              Debtor.

No.  16-12848-TWD

**DEBTOR'S SECOND AMENDED PLAN
OF LIQUIDATION**

Washington First Financial Group, Inc. ("Debtor"), the debtor and debtor-in-possession in

the above-captioned Chapter 11 case, proposes the following Plan of Liquidation pursuant to

Section 1121(a) of the Bankruptcy Code:

## ARTICLE 1.

### DEFINITION OF TERMS

Unless specifically modified elsewhere under the terms of the Plan or the context

requires otherwise, the following terms shall have the following meanings when used in initially

capitalized form in the Plan.  Such meanings shall be equally applicable to both the singular and

plural forms of such terms.  Any term used in capitalized form that is not defined in the Plan but

that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed

to such term by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (with the

DEBTOR'S PLAN OF LIQUIDATION - 1

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

Case 16-12848-TWD    Doc 741    Filed 10/14/16    Ent. 10/14/16 14:35:59    Pg. 2 of 58

Bankruptcy Code controlling in the case of a conflict or ambiguity). The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in construction of the Plan. All references to the "Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules, the FDIC Settlement Agreement, the Liquidating Trust and any annexes to the Plan (and any amendments thereto made in accordance with the Bankruptcy Code).

1.1. "Administrative Expense" means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) of the Bankruptcy Code including, but not limited to (1) any actual and necessary postpetition cost or expense of preserving the Estate or operating the business of the Debtor, (2) any payment to be made under the Plan to cure a default on any assumed executory contract or unexpired lease, (3) any postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, and (4) compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under Sections 330(a) or 331 of the Bankruptcy Code, and (b) any fee or charge assessed against the Estate under 28 U.S.C. § 1930.

1.2. "Administrative Claim" means any claim for the payment of an Administrative Expense.

1.3. "Affiliate" shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

1.4. "Allowed" means, with respect to any Claim, (a) any Claim, proof of which was timely filed with the Bankruptcy Court, or, by order of the Bankruptcy Court, was not required to be filed, or (b) any Claim that has been, or hereafter is, listed in the Schedules as liquidated in amount and not disputed or contingent, and, in (a) and (b) above, as to which either (1) no objection to the allowance thereof has been filed within the applicable period of limitation fixed

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (2) the Claim has been allowed by a Final Order (but only to the extent so allowed).

1.5. "Allowed Amount" means the dollar amount in which a Claim is Allowed.

1.6. "Bankruptcy Case" means the case of Washington First Financial Group, Inc. currently pending under Chapter 11 of the Bankruptcy Code before the Bankruptcy Court.

1.7. "Bankruptcy Code" or "Code" means the Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

1.8. "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Western District of Washington, at Seattle, before which the Bankruptcy Case is pending, or if that Court ceases to exercise jurisdiction over the Bankruptcy Case, or as the context requires, the District Court.

1.9. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

1.10. "Beneficiaries" means the beneficiaries of the Liquidating Trust Agreement, as defined in Section 2.1(a) of such Trust Agreement.

1.11. "Business Day" means any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)) or any other day on which banking institutions in Seattle, Washington are required or authorized to close by law or executive order.

1.12. "Cash" means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

1.13.   "Claim" means any claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code.

1.14.   "Collateral" means any property or interest in property of the Estate subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

1.15.   "Confirmation" or "Confirmation of the Plan" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

1.16.   "Confirmation Date" means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.17.   "Confirmation Hearing" means the hearing(s) which will be held before the Bankruptcy Court in which the Plan Proponent will seek Confirmation of the Plan.

1.18.   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code.

1.19.   "Debtor" or "WFFG" means Washington First Financial Group, Inc., the debtor in the above-captioned case, whether acting in its capacity as debtor, or debtor-in-possession.

1.20.   "Debtor in Possession" means Washington First Financial Group, Inc., who may also be referred to as "Debtor".

1.21.   "Disbursement Agent" means any Person in its capacity as a disbursement agent under Section 8.4 hereof.

1.22.   "Disclosure Statement" means the Debtor's Disclosure Statement, including all amendments, exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Plan Proponent.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

1.23. "Disputed Claim" means any Claim for which a filed or scheduled claim of an alleged creditor was listed in the Debtor's schedules as "disputed," or that has not been Allowed as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or order of the Bankruptcy Court, and (b) an objection has been or may be timely filed within the time set by the Court or by the Bankruptcy Rules, or deemed filed under applicable law and any such objection has not been (1) withdrawn, (2) overruled or denied by a Final Order or (3) granted by a Final Order. For purposes of the Plan, a Claim that has not been Allowed shall be considered a Disputed Claim, whether or not an objection has been or may be timely filed, if (A) the amount of the Claim specified in the Proof of the Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (B) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (C) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (D) no corresponding Claim has been scheduled in the Schedules or (E) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.

1.24. "District Court" means the United States District Court for the Western District of Washington, at Seattle, or the unit thereof having jurisdiction over the matter in question.

1.25. "D&Os" means the following current and former directors and officers of Washington First Financial Group, Inc. and its Subsidiaries, who are parties to the FDIC Settlement Agreement: Patrick J. Burke, Charles W. Haley, H. Arnold Huang, W. Elizabeth Huang, Agnes Kwan, Wayne Lau and Jerry Matthewson.

1.26. "Effective Date" means the first Business Day on which all the conditions precedent to the Effective Date specified in Article 9 hereof shall have been satisfied or waived as provided in Section 9.2 hereof and upon the filing of a notice by the Debtor of the occurrence

DEBTOR'S PLAN OF LIQUIDATION - 5

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Case 11-23485-TWD    Doc 741    Filed 10/14/16    Ent. 10/14/16 14:53:59    Pg. 56 of 358

of the Effective Date; provided, however, that if a stay, injunction or similar prohibition of the Confirmation Order is in effect, the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect.

1.27. "Entity" means any Person, estate, trust, Governmental Unit, or the United States Trustee.

1.28. "Environmental Claim" means any Claim, asserted by any Entity, arising out of, or related to, any Environmental Law, including, but not limited to, any Claim: (a) to restrict or enjoin, or recover damages, costs or expenses to remedy any release, environmental pollution, contamination or nuisance or to require the Debtor to remedy or to reimburse, pay or incur costs to remedy any release, environmental pollution, contamination or any nuisance, (b) to remedy, reimburse, compensate or pay any damage, penalty, fine or forfeiture for, or to restrict or enjoin any violation of or alleged violation of, any Environmental Law, (c) to pay any contractual claim with respect to any Environmental Law or (d) to pay or reimburse any Entity for personal injury (including worker's compensation, sickness, disease or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in paragraphs (a) through (c) above.

1.29. "Environmental Laws" means (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*, (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, *et seq.*, (c) the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.* (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, *et seq.*, (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, *et seq.*, (f) all statutes or laws issued or promulgated by any Governmental Unit, as they may be

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control and/or the handling, discharge, existence, release, disposal or recovery of on-site or off-site hazardous, toxic or dangerous wastes, substances, chemicals or materials, and (g) the ordinances, rules, regulations, orders, notices of violation, requests, demands and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws.

1.30. "Estate" means the bankruptcy estate of Debtor created pursuant to Section 541 of the Bankruptcy Code.

1.31. "Equity Interest" means the interest of any holders of equity securities of the Debtor represented by issued and outstanding shares of common stock or other instruments evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.32. "FDIC" means the Federal Deposit Insurance Corporation, in its corporate capacity.

1.33 "FDIC-R" means the Federal Deposit Insurance Corporation, as Receiver for Washington First International Bank.

1.33. "FDIC Settlement Agreement" means the Settlement Agreement dated effective April 29, 2016, by and among the FDIC, the Debtor, WF Capital, the LLC Subsidiaries, and the D&Os. A copy of the FDIC Settlement Agreement is annexed to the Disclosure Statement as Exhibit 5. If the FDIC Settlement Agreement is not approved by separate Court Order prior to Confirmation of the Plan, it will be deemed approved upon Confirmation.

1.34. "Final Order" means an order or judgment of the Court as to which the time for appeal has expired without a notice of appeal having been filed or as to which any appeal therefrom has been resolved.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

1.35. "Indemnified Person" has the meaning assigned to such term in Section 10.11 of this Liquidation Plan.

1.36. "Indemnity Claims" means all of the rights and claims of the D&Os whatsoever against any one or more of the Companies, including, but not limited to, any claim for indemnity or reimbursement and any other claim seeking to recover payments or other personal contributions made to FDIC-R, as receiver for Washington First International Bank ("WFIB"), to settle director and officer liability claims against them as officers and directors of WFIB including, but not limited to any payment, indemnification or reimbursement from the Debtor, for or with respect to the $450,000 paid by them to the FDIC-R from their personal funds to complete the settlement with the FDIC-R, entered into as of May 24, 2013, for WFIB, a former subsidiary of Debtor.

1.37. "IRC" means the Internal Revenue code of 1986, as amended.

1.38. "LLC Subsidiaries" means WF Capital's wholly owned subsidiaries, Sapphire RE Property Holdings, LLC; Sapphire RE Property Holdings 3, LLC; and Del Oro Properties LLC, which were merged into WF Capital effective May 6, 2016.

1.39. "Lien" means, with respect to any asset or property, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind pertaining to or affecting such asset or property.

1.40. "Liquidating Trust" means the trust proposed to be created for the benefit of all secured and unsecured creditors to be funded by the assets of the Debtor.

1.41. "Liquidating Trust Agreement" means the proposed Washington First Financial Group, Inc. Liquidating Trust Agreement, which is attached to the Disclosure Statement as Exhibit 8 and incorporated in this Plan as though fully set forth herein. To the extent there is

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

any conflict between the terms of the Plan and the Liquidating Trust Agreement, the Plan shall control.

1.42. "Liquidating Trustee" means the trustee appointed to administer the Liquidating Trust.

1.43. "Person" means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity or being of whatever kind, whether or not operating or existing for profit, including but not limited to, any "person" as such term is defined in Section 101 (41) of the Bankruptcy Code, but excluding any governmental unit.

1.44. "Petition Date" means the date upon which the Debtor filed its Chapter 11 Petition commencing the Bankruptcy Case.

1.45. "Plan" or "Liquidation Plan" means this Plan of Liquidation, including the Plan Documents and any other exhibits, schedules and various agreements incorporated in the Plan including, but not limited to, the FDIC Settlement Agreement and the Liquidating Trust Agreement, and as the Plan may be amended or modified from time to time pursuant to order of the Bankruptcy Court.

1.46. "Plan Documents" means all documents, attachments and exhibits, and any amendments thereto made in accordance with the Bankruptcy Code, that aid in effectuating the Plan.

1.47. "Plan Proponent" means the Debtor.

1.48. "Priority Claim" means any Claim (other than an Administrative Expense Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

1.49. "Priority Tax Claim" means an Allowed Claim of a governmental unit for the principal amount of a tax within the meaning of Section 507(a)(8) of the Code.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

1.50. "Pro Rata" means proportionally so that the ratio of the amount distributed on account of a particular Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the amount distributed on account of all Allowed Claims in the Class of which such particular Allowed Claim is a member to the total amount of all Allowed Claims or in such Class.

1.51. "Proof of Claim" means any proof of claim filed with the Bankruptcy Court or its duly appointed claims agent with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

1.52. "Released Parties" means all estate fiduciaries, specifically current and former directors and officers who worked on the FDIC Settlement Agreement and/or served during the Chapter 11 Bankruptcy case .

1.53. "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

1.54. "Secured Claim" means any Claim  that is (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value, net of senior Liens, of the particular Estate's interest in the assets or property securing any such Claim or the amount subject to setoff, as the case may be.

1.55. "Subsidiary" means, with respect to any Person, any other Person as to whom such first Person directly or indirectly (a) owns or controls the majority of equity interests, (b) owns or controls the majority of voting interests or (c) has the power to elect or nominate a majority of the board of directors (or other persons having similar functions).

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

1.56. "Unclassified Claims" means an Allowed Claim described in Section 507(a)(2), (a)(3), or (a)(8) of the Bankruptcy Code or as delineated in the Plan.

1.57. "United States Trustee" means the United States Trustee for the Western District of Washington.

1.58. "Unsecured Claim" means any Claim (regardless of whether such Claim is covered by insurance) that is neither secured nor entitled to priority under the Bankruptcy Code, including, but not limited to: (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, and (b) any portion of a Claim to the extent that the value of the holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.59. "WF Capital" means WF Capital, Inc., a Washington corporation, a former subsidiary of WFFG, which was merged into WFFG effective May 6, 2016.

## ARTICLE 2

## IDENTIFICATION AND TREATMENT OF UNCLASSIFIED CLAIMS

2.1. <u>Unclassified Claims</u>. Under Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified.

2.2. <u>Administrative Claims</u>. Each holder of an Administrative Claim allowed under Section 503 of the Code will be paid in full on or before the Effective Date, or upon entry of a court order allowing such Claim, whichever shall occur later, unless the holders of such Claims agree to different treatment in writing thereafter until a Final Order has been entered. Approved compensation and reimbursement to attorneys and other professionals will be paid first from

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

pre-petition retainers held in trust, then by Debtor from the assets of the Estate, and then from the Liquidating Trust prior to distribution to Unsecured Creditors.

2.3.    <u>Allowed Priority Claims</u>. Allowed priority claims pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3), and (a)(8) shall be paid as respectively provided for pursuant to 11 U.S.C. § 1129(a)(9)(A) and (C).

2.4.    <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim will be paid in regular installment payments in cash, of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim, over a period not to exceed five years after the date of the order for relief under section 301, 302 or 303, and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under section 1122(b)).

2.5.    <u>United States Trustee Fees</u>. All United States Trustee fees required to be paid by 28 U.S.C. § 1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS

A.    <u>Generally.</u>  Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims.  A Claim is classified in a particular class only to the extent that the Claim qualifies within the description of the class and is classified in a different class to the extent the Claim qualifies within the description of that different class.

B.    <u>Unclassified Claims.</u>  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are excluded from

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

the below-listed Classes.  Treatment of Unclassified Claims is provided for in Article 2 of the Plan.

C.    <u>Classes</u>.

The following is a designation of Classes of Claims:

<u>Class 1</u>.  Class 1 consists of creditors 2nd Street LLC, Michael Ching Kit and Margaret Kit Man Kwan, and Mei Hwa Ting, holders of promissory notes secured by percentage interests in the Net Loan Proceeds of three loans owed to the Debtor described more fully in Article 4.1(a), below.  This Class is impaired.

<u>Class 2</u>.  Class 2 consists of Allowed Claims of General Unsecured Creditors of the Debtor, including the FDIC, and the amounts, if any, by which any Allowed Claim of the creditors included in Class 1, exceed the value of their respective Collateral, as approved by the Court pursuant to Section 4.1(b).  This Class is impaired.

<u>Class 3</u>.  Class 3 consists of holders of Equity Interests of the Debtor.  This Class is impaired.

<u>Class 4</u>.  Class 4 consists of the Indemnity Claims of the D&Os.  This Class is impaired.

# ARTICLE 4

## TREATMENT OF CLAIMS UNDER THE PLAN

Claims, other than Unclassified Claims, shall be treated in the manner set forth in this Article 4.  Except as specifically provided elsewhere in the Plan, the treatment of, and the consideration to be received by, holders of Allowed Claims pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of the respective Allowed Claims.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

4.1. <u>Class 1</u>. The Class 1 Secured Claims of 2nd Street LLC, Michael Ching Kit and Margaret Kit Man Kwan, and Mei Hwa Ting, will be paid from the proceeds of the Collateral securing their promissory notes, as follows:

(a) The Claim of 2nd Street LLC is secured by twenty-eight percent (28%) of the Net Loan Proceeds of the Wasco #01, Wasco #03 and Bingo #1 loans (the "Wasco/Bingo Loans"). The Claim of Michael Ching Kit and Margaret Kit Man Kwan is secured by twelve percent (12%) of the Net Loan Proceeds of the Wasco/Bingo Loans. The Claim of Mei Hwa Ting is secured by ten percent (10%) of the Net Loan Proceeds of the Wasco/Bingo Loans. For purposes of this Plan, "Net Loan Proceeds" means the Cash distributions the holders of such Secured Claims.are entitled to receive from Sentosa Properties LLC ("Sentosa"), pursuant to the Distribution Agreement between Debtor and Sentosa dated February 26, 2012.

(b) Holders of Allowed Class 1 Secured Claims will retain their security interest in the Collateral up to the value of the Collateral as determined by the Bankruptcy Court until such time as the Claim is satisfied or otherwise resolved pursuant to the Bankruptcy Code.

(c) Holders of Allowed Class 1 Secured Claims will be Beneficiaries of the Liquidating Trust to be established pursuant to Article 7 of this Plan, and entitled to participate in the distributions from the Liquidating Trust described in Article 8, to the extent that their claim exceeds the value of the collateral securing their claim, unless the secured creditor elects to have its claim treated under Section 1111(b) of the Bankruptcy Code.

4.2. <u>Class 2</u>. The Allowed Class 2 General Unsecured Claims will be Beneficiaries of the Liquidating Trust to be established pursuant to Article 7 of this Plan, and entitled to participate in the distributions from the Liquidating Trust described in Article 8.

4.3. <u>Class 3</u>. The Class 3 Claims of holders of Equity Interests of the Debtor will receive no distribution under the Plan. Pursuant to the terms of the FDIC Settlement

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Agreement, all previously issued and outstanding shares of the capital stock of the Debtor, including all shares of its common stock, are deemed canceled as of the Confirmation Date.

4.4. <u>Class 4</u>. The Class 4 Indemnity Claims of the D&Os will receive no distribution under the Plan. Pursuant to the terms of the FDIC Settlement Agreement, the D&Os have agreed, upon Plan Confirmation, to release and not file any indemnity or other claims against the Estate seeking to recover payments or other personal contributions made to the FDIC.

4.5. <u>Impaired Classes</u>. All Classes of Claims under the Plan are impaired.

4.6. <u>Other Unclassified Claims and Demands</u>. None known.

**ARTICLE 5**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1. <u>Assumption, Assignment and Rejection of Unexpired Lease and Executory Contracts</u>. The Debtor is not a party to any known unexpired leases or executory contracts other than the FDIC Settlement Agreement. To the extent a creditor asserts and the Bankruptcy Court finds that the Debtor is a party to an unexpired lease or executory contract, such unexpired lease or executory contract shall be treated as follows:

(a) <u>Assumption</u>. The Debtor shall, within thirty (30) days after entry of any Final Order determining any agreement to be either an unexpired lease or executory contract, either seek approval to either (i) assume the unexpired lease or executory contract; or, (ii) reject the unexpired lease or executory contract. The FDIC Settlement Agreement shall, upon Confirmation, be deemed to be assumed. Any unexpired lease or executory contract not assumed or rejected by the Confirmation Date shall be deemed to be rejected.

(b) <u>Reservation</u>. Notwithstanding anything in Section 5.1 of the Plan to the contrary, Section 5.1 shall not apply to any unexpired lease or executory contract that is treated otherwise under the Plan.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

5.2.    <u>Rejected Unexpired Leases And Executory Contracts</u>.    Rejected unexpired leases and executory contracts shall be treated as non-priority unsecured claims in accordance with Section 5.3 of the Plan.

5.3.    <u>Damages Upon Rejection</u>.    The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of any Entity seeking damages by reason of the rejection of any executory contract or unexpired lease; provided, however, that such Entity must have timely filed a Proof of Claim with the Bankruptcy Court.  To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as, a non-priority general unsecured claim of the Debtor, and the holder thereof shall receive distributions as a holder of an Allowed Claim in Class 2.

# ARTICLE 6

## ACCEPTANCE OR REJECTION OF THE PLAN

6.1.    <u>Each Impaired Class Entitled to Vote Separately</u>.    The holders of Claims in each impaired class of Claims shall be entitled to vote separately to accept or reject the Plan.

6.2.    <u>Acceptance By Impaired Classes of Claims</u>.    Pursuant to Section 1126(c) of the Bankruptcy Code, an impaired class of Claims shall have accepted the Plan if (a) the holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such class (other than Claims held by any holder designated pursuant to Section 1126(e) of the Bankruptcy Code) have voted to accept the Plan and (b) more than one-half in number of such Allowed Claims actually voting in such class (other than Claims held by any holder designated pursuant to Section 1126(e) of the Bankruptcy Code) have voted to accept the Plan.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Case 16-12484-TWD    Doc 741    Filed 10/14/16    Ent. 10/14/16 14:53:59    Pg. 16 of 358

**ARTICLE 7**

**IMPLEMENTATION OF THE PLAN**

7.1.    <u>Liquidating Trust</u>. A Liquidating Trust shall be created for the benefit of all secured and unsecured creditors, including the FDIC, that is funded by the assets of the Debtor as of the Petition Date, including assets gained through the collapse of the Debtor's and WF Capital's corporate structure into the Merger described in the FDIC Settlement Agreement, less amounts necessary to fund administration of the Chapter 11 Estate, including but not limited to payment of allowed priority, administrative expense claims including attorney fees and reimbursement of expenses approved by the Court, United States Trustee fees, and secured claims.

7.2.    <u>Liquidating Trustee</u>. The Liquidating Trustee will be appointed subject to approval by the Bankruptcy Court.  The Liquidating Trustee will be authorized to perform acts including, but not limited to, making interim and final distributions on Allowed Unsecured Claims and establishing reserves for use by the Liquidating Trust, as set forth in the Liquidating Trust Agreement, a copy of which is attached to the Disclosure Statement as Exhibit 6 and incorporated in this Plan as though fully set forth herein.  The Bankruptcy Court will retain post-confirmation jurisdiction over the actions of the Liquidating Trustee, and the Liquidating Trustee will be required to file and serve a notice of any proposed asset sale or distribution at least 21 days prior to such sale or distribution, to permit the US Trustee or any objecting creditor to object and, if necessary, move to reopen the case following administrative closure, so the objection can be heard. The expenses of the Liquidating Trust, including compensation of the Liquidating Trustee, shall be paid out of the Liquidating Trust, subject to Bankruptcy Court approval. In the event of a conflict between the terms of the Liquidating Trust Agreement and the Plan, the Plan will control.

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

7.3.  <u>Plan Distributions</u>.

(a)    As soon as practicable after the Effective Date, the Liquidating Trustee shall distribute to the holders of Class 2 claims the net remaining Cash held by the Debtor, after: (i) payment of the amounts to be paid on the Effective date to holders of certain Unclassified Claims, as provided in Section 2.2 and 2.5; and, (ii) payment to the Liquidating Trustee, to hold for the benefit of the Claims Reserve Account and Reserve for Costs of Administration, as those terms are defined in Sections 4.3 and 4.4, respectively, in the Liquidating Trust Agreement, in amounts to be determined by the Court in the Confirmation Order.

(b)    The Liquidating Trustee shall distribute to the holders of Allowed General Unsecured Claims, provided that any such distribution is not unduly burdensome, Pro Rata in accordance with such holders' relative Beneficial Interests in the Liquidating Trust, the balance of its net income and the net proceeds from the sale of Trust Assets; provided, however, that any such distribution shall only be made after (i) reserves in the Claims Reserve Account are fully funded; and (ii) the Liquidating Trustee has retained an amount reasonably necessary to fund the Reserve for Costs of Administration, as provided for in the Liquidating Trust Agreement.

7.4.  <u>Unclaimed Property</u>.  Under the terms of the Liquidating Trust Agreement, the Liquidating Trustee may withhold from amounts distributable to any person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

To the extent not otherwise provided in the Liquidating Trust Agreement, any cash, assets, and other property to be distributed under the Plan that remain unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity entitled thereto before the later of (a) one year after distribution or (b) 120 calendar days

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

after an order allowing such Entity's Claim becomes a Final Order, shall result in cancellation of such Entity's Claim to the extent of the unclaimed amount. In such event, such Entity's Claim shall no longer be deemed to be Allowed and such Entity shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code and shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

7.5     Further Authorization.  The Debtor, if and to the extent necessary, shall seek such orders, judgments, injunctions and rulings that any of them deem necessary to carry out further the intentions and purposes of, and give full effect to the provisions of, the Plan.

7.6.     Transfer Taxes.  The issuance, transfer, or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to the Plan or the making or delivery of an instrument of transfer under the Plan shall not (and the Confirmation Order shall so order), pursuant to Section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax or other similar tax.

7.7.     Recordable Order.  The Confirmation Order shall be declared to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications or other supporting documents.

7.8.     Effectuating Documents and Further Transactions.  The Debtor and Liquidating Trustee shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.9.     Compromise of Controversies. In consideration for the distributions and other benefits provided under this Liquidation Plan, including the Liquidating Trust, the provisions of

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

this Liquidation Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under this Liquidation Plan and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under Bankruptcy Rule 9019.

## ARTICLE 8

## PROVISIONS GOVERNING DISTRIBUTIONS

8.1.     <u>Date of Distributions on Account of Allowed Claims</u>. Unless otherwise provided herein, any distributions and deliveries to be made under this Liquidation Plan shall be made on the Effective Date or as soon as practicable thereafter. In the event that any payment or act under this Liquidation Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

8.2.     <u>Sources of Cash for Plan Distribution</u>. Except as otherwise provided in this Liquidation Plan or Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Debtor's Estate, the Liquidation Trustee's liquidation of Trust Assets, as that term is defined in the Liquidating Trust Agreement, and Cash on hand.

8.3.     <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Debtor by the holder of the Allowed Claim to whom such check was originally issued. Any Claim in respect of such a voided check shall be made on or before the first anniversary of the date on which such distribution or payment was made. If no Claim is made as provided in the preceding sentence, all Claims in respect of void checks shall be discharged and forever barred and such

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

unclaimed distributions shall revert to the Debtor, notwithstanding any federal or state escheat laws to the contrary.

8.4. <u>Disbursement Agent</u>. The Liquidating Trustee, as Disbursement Agent, or such other Person or Persons designated by the Liquidating Trustee as Disbursement Agent, shall make all distributions under this Liquidation Plan from and after the Effective Date. A Disbursement Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

8.5. <u>Record Date for Distribution</u>. Distributions shall only be made to the record holders of Allowed Claims as of the Confirmation Date. On the Confirmation Date, at the close of business for the relevant register, all registers maintained by the Debtor and its respective agents, successors and assigns, including the Liquidating Trustee, shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to distributions under this Liquidation Plan. The Debtor and its respective agents, successors and assigns, including the Liquidating Trustee, shall have no obligation to recognize, for purposes of distributions pursuant to or in any way arising from this Liquidation Plan (or for any other purpose), any Claims that are transferred after the Confirmation Date. Instead, they shall be entitled to recognize only those record holders set forth in the registers as of the Confirmation Date, irrespective of the number of distributions made under this Liquidation Plan or the date of such distributions. Furthermore, if a Claim is transferred twenty (20) or fewer calendar days before the Confirmation Date, the Disbursement Agent shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

If any dispute arises as to the identity of a holder of an Allowed Claim that is entitled to receive a distribution pursuant to this Liquidation Plan, the Disbursement Agent or the servicers,

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

as applicable, may, in lieu of making such distribution to such Person, make the distribution into an escrow account until the disposition thereof is determined by Final Order or by written agreement among the interested parties to such dispute.

8.6. <u>Delivery of Distributions</u>. Subject to Bankruptcy Rule 9010, all distributions to holders of Allowed Claims shall be made at the address of such holder as set forth in the books and records of the Debtor. In the event that any distribution to any holder is returned as undeliverable, the Disbursement Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursement Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to the Debtor and the Claim of any other holder to such property or interest in property shall be discharged and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.

8.7. <u>Manner of Cash Payments Under Liquidation Plan</u>. At the Liquidating Trustee's option, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements, or as agreed by the Liquidating Trustee and the claimant.

8.8. <u>Setoffs and Recoupment</u>. Subject to the limitations provided in Section 553 of the Bankruptcy Code, and except as provided in this Liquidation Plan, the Debtor or the Liquidating Trust may, but shall not be required to, set off against or recoup from any Claim or Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Liquidating Trust of any such Claim it may have against such claimant.

8.9.    <u>Allocation of Payments</u>. In the case of distributions with respect to Claims pursuant to this Liquidation Plan, the amount of any Cash and the fair market value of any other consideration received by the holder of such Claim will be allocable first to the principal amount of such Claim (as determined for federal income tax purposes), and then, to the extent of any excess, the remainder of the Claim.

8.10.   <u>No Postpetition Interest on Claims</u>. Unless otherwise specifically provided for in this Liquidation Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on such Claim.

8.11.   <u>Withholding</u>. The Liquidating Trustee may withhold from amounts distributable to any person any and all amounts, including taxes, determined in the Liquidating Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

## ARTICLE 9

## ~~CONDITIONS PRECEDENT~~ TO EFFECTIVE DATE

~~9.1.    <u>Conditions Precedent to Effective Date of Plan</u>. The occurrence of the Effective Date of this Plan is subject to satisfaction of the following conditions precedent:~~

~~(a)    <u>Approval of FDIC Settlement Agreement</u>. The Court shall have entered an Order approving the FDIC Settlement Agreement, incorporating the terms of the FDIC Settlement Agreement into the Plan, and the Plan shall not be inconsistent with the terms of the FDIC Settlement Agreement.~~

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

(b) ~~Confirmation Order. The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in the Debtor's Bankruptcy Case and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.~~

(c) ~~Execution and Delivery of Other Documents. All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of this Liquidation Plan, including the Plan Documents, shall have been, in each case, effected, duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived in accordance with their respective terms.~~

(d) ~~Expiration of the Claims Bar Date. Debtor shall have applied for, and the Court shall have entered an Order providing for a Claims Bar Date, and the time for all creditors to have filed Proofs of Claims shall, pursuant to the Court's Order, shall have expired.~~

(e) ~~Expiration of Claims Objection Period. Debtor shall have applied for, and the Court shall have entered, pursuant to Bankruptcy Local Rule 3007-1(a) an Order providing for an expedited claims objection period, and pursuant to the Court's Order, the Claims Objection Period shall have expired.~~

(f) ~~Other Acts. Any other actions the Debtor determines are necessary to implement the terms of this Liquidation Plan shall have been taken.~~

9.2. <u>Substantial Consummation</u>. Substantial consummation of this Liquidation Plan under Section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

**ARTICLE 10**

**EFFECT OF CONFIRMATION**

10.1. <u>Vesting of Assets</u>. Except as otherwise provided in this Liquidation Plan, on the Effective Date all property comprising the Estate shall revest in the Debtor. Property identified in the Liquidation Trust Agreement shall be deemed to be transferred by the Debtor to the

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Beneficiaries by transfer to, and vesting in, the Liquidating Trust, free and clear of all Liens, Claims and Equity Interests (other than as expressly provided herein).

10.2.  Binding Effect. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Liquidation Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under this Liquidation Plan and whether or not such holder has accepted this Liquidation Plan.

10.3.  Satisfaction of Claims Against the Estate. Except to the extent otherwise provided in this Liquidation Plan or the Confirmation Order, the treatment of all Claims of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, against or Equity Interests in the Debtor under this Liquidation Plan shall be in exchange for and in complete satisfaction of all such Claims against the property of the Estate. Except as otherwise provided in this Liquidation Plan or the Confirmation Order, all Persons shall be precluded from asserting, against property of the Estate any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

10.4.  Exculpation. To the extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise specifically reserved in the Plan, the Released Parties shall not have any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, or arising out of, the negotiation of the FDIC Settlement Agreement, the negotiation and the pursuit of approval of the Disclosure Statement, this Liquidation Plan or the solicitation of votes for, or confirmation of, this Liquidation Plan, the funding of this Liquidation Plan, the consummation of this Liquidation Plan, or the administration

DEBTOR'S PLAN OF LIQUIDATION - 25

Case 16-12488-TWD    Doc 741    Filed 10/11/16    Ent. 10/11/16 14:53:59    Pg. 26 of 58

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

of this Liquidation Plan (except for any liability that results from willful misconduct as determined by a Final Order) or the property to be distributed under this Liquidation Plan and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Liquidation Plan. Notwithstanding the foregoing, claims for breach of fiduciary duty, willful misconduct, and gross negligence of the Released Parties are excluded from the exculpation afforded by this Section 10.4.

10.5. <u>Reservation of Defenses</u>. Except as otherwise provided in the FDIC Settlement Agreement, the Plan preserves the D&Os' right to assert exculpation rights and defenses to any claims brought by third parties under Section 10.5 of the Plan, including the Liquidating Trustee, under the articles, bylaws, contracts and Washington Business Corporations Act.

10.6. <u>Avoidance Actions</u>. The Debtor has reviewed and does not intend to pursue recovery of any potentially avoidable transfers. The Liquidating Trustee shall have the sole right to investigate and pursue any potentially avoidable transfers on behalf of the Estate. Otherwise, as of the Effective Date, the Debtor and the Estate shall be deemed to have waived the right to prosecute, and to have settled and released for fair value, any avoidance or recovery actions under Sections 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or other applicable law that belong to the Debtor which: (i) has not been commenced as of the Effective Date; and, (ii) the Debtor could have prosecuted as debtor or debtor-in-possession against the FDIC and the other Released Parties.

10.7. <u>Term of Injunctions or Stays</u>.

(a) Except as otherwise expressly provided herein, and except with respect to enforcement of this Liquidation Plan, all Persons who have held, hold or may hold any Claim against, or Equity Interest in, the Debtor as of the Effective Date will be permanently enjoined,

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind in any forum with respect to such Claim or Equity Interest against property of the Estate, (ii) the enforcement, attachment, collection or recovery in any manner or by any means any judgment, award, decree or order against the Debtor or property of the Estate, with respect to such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or other encumbrance of any kind against the Debtor or property of the Estate or interests in property of the Debtor, with respect to any such Claim or Equity Interest, (iv) asserting a right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against any property or interests in property of the Debtor, with respect to such Claim or Equity Interest, (v) commencing or continuing any action, in any forum, that does not comply or is inconsistent with the provisions of this Liquidation Plan and (vi) pursuing any such Claim released pursuant to Sections 10.4 and 10.6 hereof.

(b)     Unless otherwise provided, all injunctions or stays arising under or entered during the Debtor's Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.87.  <u>Termination of Subordination Rights and Settlement of Related Claims</u>. The classification and manner of satisfying all Claims and Equity Interests under this Liquidation Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, Sections 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a holder of a Claim or Equity Interest may have with respect to any distribution to be made under this Liquidation Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions under this Liquidation Plan to holders of

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Allowed Claims will not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

10.9.  Preservation of Claims. Except as otherwise provided in this Liquidation Plan, including Sections 10.4 through 10.7, as of the Effective Date, pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, claim and demand whatsoever, whether known or unknown, at law, in equity or otherwise, but excluding any Released Claims (collectively, "Causes of Action") accruing to the Debtor, shall become assets of the Liquidating Trust, and the Liquidating Trustee shall have the authority to commence and prosecute such Causes of Action for the benefit of the Estate and the Liquidating Trust. After the Effective Date, the Liquidating Trustee shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Causes of Action without approval of the Bankruptcy Court.

# ARTICLE 11
## RESOLUTION OF DISPUTED CLAIMS

11.1.  Disputed Claims.

(a)  Objection Deadline.  The Debtor shall have obtained from the Court, pursuant to Bankruptcy Local Rule 3007-1(a), an Order providing for an expedited claims objection period, which shall expire prior to the Effective Date.  Debtor shall, in good faith, make its best efforts to prosecute to Final Order, resolve or otherwise dispose of any and all objections to Claims, prior to the Effective date.

(b)  Prosecution of Objections.  After the Effective Date, any Disputed Claim, to which an objection is pending, shall be resolved by the Liquidating Trustee pursuant to the terms of

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

the Liquidating Trust Agreement. After the Effective Date, the Liquidating Trustee shall have the sole authority to litigate to judgment, settle or withdraw such objections to Disputed Claims.

(c)     No Distribution on Disputed Claims. Except as otherwise provided in the Liquidating Trust Agreement, and notwithstanding any provision of the Plan specifying the time for payment of distributions to holders of claims, no payment or distribution shall be made to the holder of any Disputed Claim until the time such claim has been determined to be an Allowed Claim.

# ARTICLE 12
## RETENTION OF JURISDICTION

12.1.   Jurisdiction. Unless otherwise provided for herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of, or related to, the Debtor's Bankruptcy Case, this Liquidation Plan, the Liquidation Trust and the FDIC Settlement Agreement pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To determine any and all adversary proceedings, applications and contested matters in the Debtor's Bankruptcy Case and grant or deny any application involving the Debtor that may be pending on the Effective Date.

(b)     To ensure that distributions to holders of Allowed Claims are accomplished as provided in this Liquidation Plan;

(c)     To hear and determine any timely objections to Administrative Claims or to proofs of claim and equity interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any disputed claim in whole or in part;

(d)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

DEBTOR'S PLAN OF LIQUIDATION - 29

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Case 16-12848-TWD    Doc 741    Filed 10/14/16    Ent. 10/14/16 14:53:59    Pg. 30 of 58

(e)     To issue such orders in aid of execution of this Liquidation Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(f)     To consider any amendments to or modifications of this Liquidation Plan, or to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(g)     To hear and determine all applications of retained professionals under Sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(h)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Liquidation Plan, the Confirmation Order, the Liquidation Trust, the FDIC Settlement Agreement, any transactions or payments contemplated by this Liquidation Plan or any agreement, instrument or other document governing or relating to any of the foregoing;

(i)     To hear and determine all controversies, suits and disputes that may arise under the Liquidating Trust Agreement, including but not limited to any and all claims and disputes asserted against the Liquidating Trustee;

(j)     To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of taxes under Section 505(b) of the Bankruptcy Code);

(k)     To hear any other matter not inconsistent with the Bankruptcy Code;

(l)     To hear and determine all disputes involving the existence, scope and nature of any of the releases, benefits or obligations provided for under Section 10.3, 10.4, 10.5 and 10.6 hereof;

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

(m)     To issue injunctions and effect any other actions that may be necessary or desirable to restrain interference by any Person with the consummation or implementation of this Liquidation Plan;

(n)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with this Liquidation Plan with respect to any Person;

(o)     To enter a final decree closing the Debtor's Bankruptcy Case;

(p)     To hear and determine all disputes relating to the effect of this Liquidation Plan under any agreement to which the Debtor or any Affiliate of the Debtor is a party; and

(q)     To hear and determine all disputes relating to the Liquidating Trustees post-confirmation actions, including but not limited to proposed sales of assets, distributions to creditors, and compensation of the Liquidating Trustee.

12.2.    Standing.  The Liquidating Trustee shall have standing in any proceeding relating to controversies, suits, claims and disputes arising under the Liquidating Trust Agreement to enforce the rights and powers of the Liquidating Trustee or of the Beneficiaries arising under the Liquidating Trust Agreement or the Plan, as the Representative of the Estate.

12.3.    Modification of Payment Terms.  The Liquidating Trustee shall have the right to modify the treatment of any Allowed Claim at any time after the Effective Date upon the consent of the holder of such Allowed Claim.

## ARTICLE 13

## MISCELLANEOUS

13.1.    Entire Agreement.  The Plan sets forth the entire agreement and undertakings relating to the subject matter thereof and supersedes all prior discussions and documents.  No Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

13.2.    <u>Headings</u>.  Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

13.3.    <u>Administrative Expense Bar Date.</u>  Unless otherwise ordered by the Bankruptcy Court, the Confirmation Order shall operate to set a bar date for Administrative Expense (the "Administrative Expense Bar Date"), which bar date, except with respect to Administrative Expense of professional persons for compensation of fees and expenses, shall be the first business day that is at least 180 days after the Effective Date.  Claimants holding Administrative Expense claims against the Debtor not paid on the Effective Date may submit a Request for Payment of Administrative Expense on or before such bar date.

13.4.    <u>Governing Law</u>.  Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable or where the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed, and enforced in accordance with, the laws of the State of Washington, without giving effect to the principles of conflicts of law thereof.

13.5.    <u>Severability</u>.  Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision in the Plan is either illegal on its face or illegal as applied to any Claim, such provision shall be unenforceable either as to all holders of Claims or as to the holder of such Claim as to which the provision is illegal, respectively.  Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

13.6.    <u>No Interest</u>.  Except as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be Allowed on any Claim.

13.7.    <u>Limitation on Allowance</u>.    No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

13.8.    <u>Estimated Claims</u>.  To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

13.9.    <u>Successors and Assigns</u>.  The rights, duties and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

13.10.    <u>Non-Debtor Waiver of Right</u>.  Non-debtor parties shall have the right to voluntarily waive any rights, benefits or protections that are afforded to them under the provisions of the Plan or any order issued in furtherance of the Plan, and such waiver shall supersede such rights, benefits or protections.

13.11.    <u>Retained Claims and Interests</u>.    On the Effective Date, Debtor's assets designated to fund the Liquidating Trust shall be transferred to the Liquidating Trust, together with all rights, claims and causes of action to recover monies owed to the Debtor by borrowers and guarantors, including but not limited to the recovery of the Wasco/Bingo Loans, and to recover and/or liquidate any and all claims and other assets listed by the Debtor in Schedules A and B filed with the Bankruptcy Court, including amendments thereto. (the "Retained Claims and Interests").  The Liquidating Trustee shall be and is hereby appointed as the representative of the Estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code for the purpose of

DEBTOR'S PLAN OF LIQUIDATION - 33

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Case 16-12448-TWD    Doc 741    Filed 10/14/16    Ent. 10/14/16 14:35:59    Pg. 34 of 58

pursuing any Claims or causes of action with respect to assets in the Liquidating Trust, and any Retained Claims and Interests. On the Effective Date, the Debtor shall be deemed to have waived any Claims or interests, and abandoned any asset, not transferred to the Liquidating Trust.

13.12.    Unmarked Ballots. Executed ballots, if any, respecting the Plan returned by creditors or parties in interest to the Debtor which do not indicate acceptance or rejection of the Plan shall be deemed and counted as acceptances of the Plan..

13.13.    Notices. All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be mailed by 1) U.S. mail; and 2) registered or certified mail, return receipt requested, to:

If to the Debtor:

Thomas A. Sterken
Law Offices of Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052

With mandatory copies to:

Jeffrey L. Smoot
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 1700
Seattle, WA  98101

13.14.    Reservation of Rights. Except as expressly set forth herein, this Liquidation Plan shall have no force and effect unless and until the Bankruptcy Court has entered the Confirmation Order and the Effective Date has occurred. The filing of this Liquidation Plan, any statement or provision contained in this Liquidation Plan, or the taking of any action by the Debtor or any other party with respect to this Liquidation Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtor or any other party with respect to Claims or Equity Interests or any other matter.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA  98101
PHONE 206 623-3427
FAX: (206) 682-6234

DEBTOR'S PLAN OF LIQUIDATION - 34
Case 16-12448-TWD    Doc 741    Filed 10/14/16    Ent 10/14/16 14:53:59    Pg 35 of 58

13.15.    <u>Further Assurances</u>. The Debtor, as applicable may file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Liquidation Plan.

13.16.    <u>Exhibits Incorporated</u>. All exhibits to this Liquidation Plan, including the FDIC Settlement Agreement, the Liquidating Trust and Plan Supplements, are incorporated into and are a part of this Liquidation Plan as if fully set forth herein.

13.17.    <u>Amendment or Modification of this Liquidation Plan</u>. Subject to Section 1127 of the Bankruptcy Code and, to the extent applicable, Sections 1122, 1123 and 1125 of the Bankruptcy Code, alterations, amendments or modifications of this Liquidation Plan may be proposed in writing by the Debtor at any time prior to or after the Confirmation Date, but prior to the Effective Date. Holders of Claims that have accepted this Liquidation Plan shall be deemed to have accepted this Liquidation Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder; provided, however, that any holders of Claims who were deemed to accept this Liquidation Plan because such Claims were unimpaired shall continue to be deemed to accept this Liquidation Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

13.18.    <u>Inconsistency</u>. In the event of any inconsistency between and among any of the Liquidation Plan, the Disclosure Statement and any exhibit thereto, the FDIC Settlement Agreement and the Liquidating Trust, every effort shall be made to construe each of the documents to give full effect to the document's purpose and effect, and if not possible, the provisions of this Liquidation Plan shall govern, but only so far as any such direct inconsistency.

13.19.    <u>Section 1125(e) of the Bankruptcy Code</u>. As of the Confirmation Date, the Debtor shall be deemed to have solicited acceptances of this Liquidation Plan in good faith and in

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

compliance with the applicable provisions of the Bankruptcy Code. The Debtor (and each of its successors, predecessors, control persons, members, Affiliates, agents, directors, officers, employees, investment bankers, financial advisors, accountants, attorneys and other professionals and any officer or employee serving as a director, manager, officer or employee of any Affiliate of the Debtor or trustee (or similar position) of any employee benefit plan or trust (or similar person) of the debtor or its Affiliates) has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities under this Liquidation Plan. Accordingly, such entities and individuals shall not be liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Liquidation Plan or the offer and issuance of the securities under this Liquidation Plan.

13.20.    Compliance with Tax Requirements. In connection with this Liquidation Plan and all instruments issued in connection herewith and distributed hereunder, any party issuing any instruments or making any distribution under this Liquidation Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Liquidation Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Liquidation Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instruments or making any distribution under this Liquidation Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

13.21. <u>No Admissions</u>. If the Effective Date does not occur, this Liquidation Plan shall be null and void in all respects, and nothing contained in this Liquidation Plan shall (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, (b) prejudice in any manner the rights of the Debtor or any other party in interest or (c) constitute an admission of any sort by the Debtor or other party in interest.

## ARTICLE 14

## ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

The performance of all obligations which shall be due and owing on the Effective Date pursuant to the terms of this Plan shall constitute the full administration of this Estate for purposes of Section 350 of the Code and Bankruptcy Rule 3022, and shall be deemed substantial consummation of the Plan within the meaning of Section 1101(2) of the Code. Notwithstanding any closing of the Bankruptcy Case, the Debtor or Liquidating Trustee may move, without notice, to reopen this case for the purpose of seeking relief pursuant to the retained jurisdiction of the Bankruptcy Court provided herein or under applicable law.

**OLES MORRISON RINKER BAKER LLP**
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

DEBTOR'S PLAN OF LIQUIDATION - 37
Case 16-12448-TWD    Doc 741    Filed 10/14/16    Ent 10/14/16 14:53:59    Pg 38 of 58

RESPECTFULLY SUBMITTED this 7th day of October 2016.

Debtor and Debtor-in-Possession

WASHINGTON FIRST FINANCIAL GROUP, INC.

By: _____/s/ Elizabeth Huang_____
W. Elizabeth Huang, Its President

OLES MORRISON RINKER & BAKER LLP

By: _____/s/ Jeffrey L. Smoot_____
Jeffrey L. Smoot, WSBA #39335
Melia A. Preedy; WSBA #47940
Attorneys for Debtor

4852-9934-1882, v. 1-7946-0665, v. 1

DEBTOR'S PLAN OF LIQUIDATION - 38

OLES MORRISON RINKER BAKER LLP
701 PIKE STREET, SUITE 1700
SEATTLE, WA 98101
PHONE 206 623-3427
FAX: (206) 682-6234

Case 16-12484-TWD   Doc 741   Filed 10/11/16   Ent 10/11/16 14:53:59   Pg 39 of 58

# EXHIBIT 2

# WASHINGTON FIRST FINANCIAL GROUP, INC.
## LIQUIDATING TRUST AGREEMENT

This Liquidation Trust Agreement (the "Trust Agreement"), is made and entered into effective as of October __, 2016, by and between Washington First Financial Group, Inc., debtor-in-possession ("Debtor") under Chapter 11 case No. 16-12484, U.S. Bankruptcy Court for the Western District of Washington, the holders of Class 1 and Class 2 Claims under the Plan of Liquidation confirmed by Order of the Court entered on October ___, 2016 and Pacific Realty Advisors LLC, solely in its capacity as liquidating trustee ("Trustee").

## RECITALS

A.      Debtor is the debtor in the Bankruptcy Case.  On October ___, 2016, the Court entered its Order confirming Debtor's Plan of Liquidation (including without limitation the Appendix, all exhibits, supplements and schedules thereto) (the "Plan of Liquidation").  A copy of this Trust Agreement, in substantially final form, was attached as an exhibit to the Disclosure Statement accompanying the Plan of Liquidation.

B.      The Trust Agreement creates a liquidation trust pursuant to, and to effectuate, the Plan of Liquidation, which, along with the Confirmation Order, is attached as Exhibit A.  The Plan of Liquidation, among other things, provides for the establishment of a liquidating trust evidenced hereby (the "Liquidating Trust") to resolve, liquidate and realize upon the Trust Assets as successor to and representative of the Estate of the Debtor pursuant to the Plan and the Order Confirming the Plan of Liquidation.

C.      The Liquidating Trust is created to fulfill the obligations set forth in the Plan of Liquidation and is for the benefit of the Holders of Allowed Claims in Class 1 and Class 2 under the Plan of Liquidation (to the extent such Holders are entitled to a distribution under the Plan of Liquidation) (whether or not such Claims are Allowed as of the Effective Date);

D.      The Liquidating Trust is established for the sole purpose of liquidating the Trust Assets, resolving Disputed Claims, pursuing collection on the Litigation Claims and Causes of Action, making distributions on Allowed Claims, and to take other actions as is reasonably necessary to effectuate the obligations pursuant to this Trust Agreement and Section 301.7701-4(d) of the Treasury Regulations, and with no objective to continue or engage in the conduct of a trade or business; and

## AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan of Liquidation, the parties hereto agree as follows:

## ARTICLE I

For the purposes of this Agreement, unless the context otherwise requires, the following definitions are used in this Trust Agreement.  Any capitalized term not defined in this Trust Agreement shall be as defined in the Plan of Liquidation, or in the Bankruptcy Code.

**"Bankruptcy Case"** shall mean the Chapter 11 bankruptcy case filed by Washington First Financial Group, Inc., No. 16-12848, in the Court.

**"Committee"** shall mean the Official Unsecured Creditor's Committee, appointed by the Court in the Bankruptcy Case, if any.

**"Confirmation Order"** shall mean the Order entered by the Court in the Bankruptcy Case confirming the Plan of Liquidation.

**"Court"** shall mean the United States Bankruptcy Court for the Western District of Washington, the court presiding over the Bankruptcy Case.

**"Disclosure Statement"** shall mean the Disclosure Statement filed with the Court in the Bankruptcy Case, accompanying the Plan of Liquidation.

**"Effective Date"** shall mean the date on which the Plan of Liquidation becomes effective, as set forth and defined in the Plan of Liquidation.

**"Majority Beneficiaries"** shall mean one or more Beneficiaries holding combined Beneficial Interest of more than fifty percent (50%) of the Liquidation Trust.

**"Trust Assets"** shall mean all the property held from time to time by the Trustee under this Agreement, which initially shall consist of the assets listed or described on Schedule B hereto, and which thereafter shall include all dividends, distributions, rents, royalties, income, federal or state tax refunds due to Debtor, payments and recoveries of claims, proceeds and other receipts of, from, or attributable to any assets held by the Trust, less any of the foregoing utilized by the Trustee to pay expenses of the Trust, satisfy Liabilities or to make distributions to the Beneficiaries pursuant to the terms and conditions hereof.

**"Trustee"** shall mean the liquidating trustee appointed pursuant to Section 2.4, and approved by the Court, including any subsequent appointed Trustee.

## ARTICLE II
## ESTABLISHMENT OF THE LIQUIDATING TRUST

2.1.    Transfer of Property to the Liquidating Trust; Assignment and Assumption of Claims.

(a)    Pursuant to the Plan of Liquidation, the Liquidating Trust hereby created is a Massachusetts Trust under the "Massachusetts Trust Act of 1959" (Ch. 23.90 of the Revised Code of Washington (as the same may be amended from time to time, the "Act")) on behalf of the Holders of Allowed Claims in Classes 1 and 2 under the Plan of Liquidation (to the extent such Holders are entitled to a distribution under the Plan whether or not such Claims are Allowed as of the Effective Date) (individually, a "Beneficiary," and, collectively, the "Beneficiaries"). The name of the Liquidating Trust shall be the "WFFG Liquidating Trust."

(b)    The Liquidating Trust is organized for the sole purpose of liquidating the Trust Assets in an expeditious but commercially reasonable manner subject to the provisions

2

herein. The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business except as necessary for the orderly liquidation of Trust Assets. Pursuant to this purpose, the Trustee will (1) liquidate the Trust Assets and facilitate distribution of the proceeds therefrom; (2) allocate, protect, conserve, and manage the Trust Assets in accordance with the terms and conditions hereof; and (3) distribute the proceeds in accordance with the terms and conditions hereof.

(c)     It is intended that the granting, assignment and conveyance of the Trust Assets by Debtor to the Trustee pursuant to the terms hereof shall be treated for Federal income tax purposes and any applicable state and local tax purposes as if the Debtor had made such distributions directly to the Beneficiaries. It is further intended that for such purposes the Liquidating Trust shall be treated as a liquidating trust under Treasury Regulation Section 301.7701-4(d) and any analogous provision of state or local law, and the Beneficiaries shall be treated as owners of their respective shares of the Liquidating Trust pursuant to Code Sections 671 through 679 and any analogous provision of state or local law. The Trustee shall file all tax returns required to be filed with the Internal Revenue Service consistent with this position, including, but not limited to, any returns required of grantor trusts pursuant to Treasury Regulation Section 1.671-4(a).

(d)     The Debtor hereby transfers, assigns, and delivers to the Liquidating Trust all of the Debtor's right, title, and interest in the Trust Assets to the extent provided for in the Confirmation Order free and clear of any lien, Claim or interest in such property except as provided in the Plan of Liquidation. Subject to the provisions of the previous sentence, the Trust Assets are being contributed and transferred "As Is, Where Is and With All Faults" and without any assurances concerning collection, enforcement, value or the like. The Trustee on behalf of the Liquidating Trust hereby agrees to accept and hold the Trust Assets in trust in order to fulfill its obligations under the Plan of Liquidation and this Trust Agreement and for the Holders of Allowed Claims in Classes 1 and 2 under the Plan of Liquidation, subject to the terms of this Trust Agreement and the Plan of Liquidation. Upon the transfer of the Trust Assets, the Liquidating Trust shall succeed to all of the Debtor's right, title and interest in the Trust Assets and the Debtor will have no further interest in or with respect to the Trust Assets or this Liquidating Trust. The Trustee is hereby authorized to execute and file with any governmental authority any documents necessary to establish the Liquidating Trust. In furtherance of the preceding sentence, the Trustee is hereby authorized to execute and file a verified copy of this Agreement creating the Liquidating Trust and any amendment thereto, the name of the Liquidating Trust and the name and address of the Trustee with the office of the Secretary of State of the State of Washington pursuant to RCW 23.90.040.

(e)     The Trustee on behalf of the Liquidating Trust hereby acknowledges and agrees that all Trust Assets will be transferred to the Liquidating Trust subject to the following liabilities, if any, which arise out of or relate to any known or unknown claim (as such term is defined in Section 101(5) of the Bankruptcy Code) or causes of action against the Debtor or its Estate, each of which the Trustee on behalf of the Liquidating Trust hereby agrees to assume: (i) Allowed Administrative Expense Claims, Priority Claims, and Secured Claims ("A/P/S Claims") that have not been paid as of the Effective Date; (ii) A/P/S Claims that have not been Allowed as of the Effective Date but which are subsequently Allowed; (iii) all U.S. Trustee Fees until such time as the Bankruptcy Court enters a final decree closing the Bankruptcy Case; (iv) any

expenses incurred and unpaid, or to be incurred, by the Trustee (including the fees and costs of attorneys and other professionals) in the performance of its administrative duties in liquidating the Trust Assets (including fees and costs for the filing of final tax returns for the Liquidating Trust and the payment of any taxes shown thereon), and any tax liability determined to be due and owing pursuant to any requests for expedited determinations under Section 505 of the Bankruptcy Code); (v) any obligations owing pursuant to the Plan of Liquidation and unpaid (including obligations incurred after the Confirmation Date); but (vi) specifically excluding any Claims which have been barred or discharged pursuant to the Plan of Liquidation or other order of the Bankruptcy Court.

2.2. <u>Treatment of Transfer of Trust Assets</u>. For federal income tax purposes, all parties (including, without limitation, the Debtor, the Trustee, and the Beneficiaries) shall treat the transfer of the Trust Assets in accordance with Section 2.1 above, as:

(a) a transfer of such Trust Assets to the Beneficiaries, with each such Beneficiary receiving an undivided interest in the Trust Assets, the liquidation proceeds of which such Beneficiary is entitled to share in pursuant to Article II of the Plan of Liquidation, having a value that equals, as nearly as possible, the amount such Beneficiary would receive if, on the Effective Date, all Disputed Claims were treated as Allowed Claims, and all Trust Assets were liquidated at their fair market value, converted to cash and distributed to Beneficiaries on a pro rata basis based on the ratio of such Beneficiary's Allowed Claims to the aggregate amount of Allowed Claims; followed by

(b) a transfer to the Liquidating Trust by each such Beneficiary of the undivided interest in that portion of the Trust Assets that such Beneficiary was deemed to receive pursuant to subparagraph (a) above (a "<u>Beneficial Interest</u>" and, collectively, the "<u>Beneficial Interests</u>"), such that each such Beneficiary shall be treated as the grantor and owner of the portion of the Liquidating Trust which corresponds to such Beneficiary's Beneficial Interest.

2.3. <u>Valuation of Trust Assets</u>. As soon as practicable after the Effective Date, the Trustee shall make a good faith determination of the fair market value of the Trust Assets as of the Effective Date; provided, however, that the Trustee shall not be required to hire an expert to make such a valuation. This valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Trustee, and the Beneficiaries) for all federal income tax purposes.

2.4. <u>Appointment of the Trustee</u>. The Trustee shall be John P. Rader of Pacific Realty Advisors, LLC, subject to approval by the Bankruptcy Court.

## ARTICLE III
## BENEFICIAL INTERESTS

3.1. <u>Rights of the Liquidation Trust Beneficiaries</u>. Each holder of a Beneficial Interest shall take and hold its Beneficial Interest subject to all of the terms and provisions of this Trust Agreement and the Plan of Liquidation, including payment of any Allowed Claims payable pursuant to the Plan of Liquidation. The interest of a holder of a Beneficial Interest is in all respects personal property, and upon the death, insolvency or incapacity of a holder of a Beneficial Interest, as applicable, such holder's Beneficial Interest shall pass to the legal representative or other successor, as applicable, of such holder, and such death, insolvency or incapacity shall not

4

terminate or affect the validity of this Trust Agreement. A holder of a Beneficial Interest shall have no title to, right to, possession of, management of, or control of, the Trust Assets except as herein expressly provided. No surviving spouse, heir or devisee of any deceased holder of a Beneficial Interest shall have any right of dower, homestead, or inheritance, or of partition, or any other right, statutory or otherwise, in the Trust assets, but the whole title to all the Trust Assets shall be vested in the Trustee and the sole interest of the holder of a Beneficial Interest shall be the rights and benefits given to such persons under this Trust Agreement.

      3.2.   <u>Identification of Holders of Beneficial Interests</u>. The record holders of Beneficial Interests shall be recorded and set forth in a register maintained by the Trustee expressly for such purpose. All references in this Trust Agreement to holders of Beneficial Interests shall be read to mean holders of record as set forth in the official register maintained by the Trustee and shall not mean any beneficial owner not recorded on such official registry.

      3.3.   <u>Transferability of Beneficial Interests</u>. The Beneficial Interests shall not be (i) transferable; or (ii) certificated, and shall only be issued in book-entry form; provided, however, that Beneficial Interests shall be assignable or transferable by will, intestate succession, operation of law or on Notice to the Court and as set forth in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or as otherwise set forth in this Trust Agreement.

      3.4.   <u>Holders of Beneficial Interests Have Limited Rights in Connection with Administration of the Liquidating Trust</u>. This Trust Agreement grants exclusive authority over administration of the Liquidating Trust to the Trustee, except as otherwise expressly provided in this Trust Agreement and the Plan of Liquidation. No holder of a Beneficial Interest shall have legal title to any part of the Trust Assets. No transfer by operation of law or otherwise, of the right, title and interest of any holder of a Beneficial Interest in and to the Trust Assets or hereunder shall operate to terminate this Trust Agreement or entitle any successor or transferee of such holder of a Beneficial Interest to an accounting or to the transfer to it of legal title to any part of the Trust Assets.

**ARTICLE IV**
**PURPOSE, AUTHORITY, LIMITATIONS, DISTRIBUTIONS AND DUTIES**

      4.1.   <u>Purpose of the Liquidating Trust</u>. The Liquidating Trust shall be established for the sole purpose of liquidating the Trust Assets, resolving Disputed Claims not resolved by the Effective Date and making distributions on Holders of Allowed Claims in accordance with the Plan of Liquidation, this Trust Agreement and Section 301.7701-4(d) of the Treasury Regulations, and with no objective to continue or engage in the conduct of a trade or business.

      4.2.   <u>Liquidation of the Trust Assets</u>. The Trustee shall, in an expeditious but orderly manner, liquidate and convert to cash the Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust. The liquidation of the Trust Assets may be accomplished through the sale of Trust Assets (in whole or in combination) in a commercially reasonable manner. The Trustee shall liquidate and reduce to cash the Trust Assets within two (2) years from the Effective Date. The Trustee shall make its best efforts to sell the Trust Assets at a reasonable market value, if possible, and if not possible, to reduce the sale price of any one or more of the Trust Assets to a reasonable sale price calculated to sell any one or more of the Trust Assets

5

within the time limitation set forth herein. In the event that the Trustee determines, exercising its business judgment, after consultation with any professional employed by the Trustee to liquidate any one or more of the Trust Assets, that: (i) holding or preparing for sale any one or more of the Trust Assets will be burdensome to the Liquidating Trust; or, (ii) sale cannot be achieved within the time limitation set forth herein, the Trustee shall be authorized to abandon one or more of the Trust Assets to the Holder of the Class 1 Claim holding a lien against the respective Trust Asset.

4.3.    Claims Reserve Account.  The Trustee shall hold in a segregated account a sufficient amount to reserve for payment of any claim which is disputed, which dispute is not resolved by the Effective Date (the "Claims Reserve Account").  The amount reserved for each such claim shall be the amount which would have been paid to such claimant had the Claim not been in dispute.  The funds held for the Holder of a Claim which is disputed shall be held by the Trustee until the Disputed Claim is resolved by Final Order of the Court, at which time the funds reserved with respect to such Claim shall be distributed to the Claimant, or transferred to the funds to be paid to Holders of Allowed Claims, as the case may be.

4.4.    Reserve for Costs of Administration.  The Trustee shall be authorized to maintain a reasonable reserve to meet the ordinary and necessary expenses determined to be needed for administration of the Liquidating Trust (the "Administration Reserve Account" ), including amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Liquidating Trust in accordance with the Plan of Liquidation or this Trust Agreement, including taxes and including without limitation the fees and expenses of professionals retained by the Liquidation Trustee.

4.5.    Authority of Trustee.  In connection with the administration of the Liquidating Trust, except as set forth in this Trust Agreement, the Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Liquidating Trust as set forth herein and in the Plan of Liquidation. Specifically, in accordance with Article IV of the Plan of Liquidation, the Trustee is authorized to perform acts including, but not limited to, making interim and final distributions on Allowed Class 1 and 2 Claims and establishing reserves for use by the Liquidating Trust on the Effective Date. Without limiting, but subject to the foregoing Sections 4.2 through 4.4 herein, the Trustee shall be expressly authorized to:

(a)    hold legal title to any and all property interests in or arising from the Trust Assets, including, but not limited to, collecting and receiving any and all money and other property belonging to the Liquidating Trust and the right to vote any claim or interest in an unrelated case under the Bankruptcy Code and receive any distribution thereon;

(b)    cause legal title (or evidence of title) to any of the Trust Assets to be held by any nominee, on such terms and in such manner as the Trustee may determine;

(c)    perform the duties, exercise the powers, and assert the rights of a trustee, as set forth in this Trust Agreement, as a representative of the Estate for purposes of Section 1123 of the Bankruptcy Code;

(d)  protect and enforce the rights to the Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(e)  compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, or otherwise deal with and settle claims including, but not limited to, claims in favor of or against the Liquidating Trust (including any or all A/P/S Claims and Unsecured Claims) without further approval of or application to the Bankruptcy Court, as the Trustee shall deem advisable in any and all appropriate jurisdictions;

(f)  recover and compel turnover of the Debtor's property that comprise Trust Assets as may be permitted by the Bankruptcy Code or applicable state law, including, without limitation, those identified in the Plan of Liquidation and Disclosure Statement;

(g)  determine and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust, in accordance with the terms set forth in Section 4.6 hereof;

(h)  file, on behalf of the Debtor, the final tax return of the Debtor and the tax returns of the Liquidating Trust;

(i)  file all tax and information returns with respect to the Liquidating trust and pay taxes properly payable by the Liquidating Trust, if any;

(j)  make all necessary filings in accordance with any applicable law, statute or regulation;

(k)  dissolve any corporate entities, terminate joint ventures, or otherwise wind up any corporate entity owned by the Liquidating Trust, and the Trustee shall be deemed a board-appointed officer to complete the same;

(l)  execute offsets against Claims as provided for in the Plan of Liquidation;

(m)  assert or waive any privilege or defense on behalf of the Liquidating Trust and/or the Debtor;

(n)  pay all expenses and make all other payments relating to the Trust Assets;

(o)  pay all U.S. Trustee Fees until such time as the Bankruptcy Court enters a final decree closing the Debtor's Chapter 11 Cases;

(p)  utilize the Trust Assets to purchase or create and carry all appropriate insurance coverage with respect to the liabilities and obligations of the Trustee, under this Trust Agreement (in the form of an errors or omissions policy or otherwise);

(q)  obtain insurance coverage with respect to real and personal property which may become Trust Assets, if any;

7

(r)     retain and pay law firms, as counsel to the Liquidating Trust to aid in the prosecution of any claims that constitute the Trust Assets, and to perform such other functions as may be appropriate, and in connection therewith, (i) the Trustee shall pay such law firms reasonable compensation for services rendered and expenses incurred, and (ii) a law firm shall not be disqualified from serving as independent counsel to the Liquidating Trust solely because of its prior retention as counsel to the Debtor or the Committee;

(s)     retain and pay an accounting firm to prepare and file any tax returns or information returns for the Liquidating Trust as may be required. The Trustee shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred. An accounting firm shall not be disqualified from being retained by the Liquidating Trust solely because of its prior retention by the Debtor or the Committee;

(t)     retain and pay third parties to assist the Trustee in carrying out its powers and duties under this Trust Agreement. The Trustee shall pay all such persons or entities reasonable compensation for services rendered and expenses incurred. A third party shall not be disqualified from being retained by the Liquidating Trust solely because of such party's prior retention by the Debtor or the Committee;

(u)     exercise any and all rights afforded the Debtor under Section 505 of the Bankruptcy Code to request a determination of the state and federal tax liabilities with respect to Trust Assets and the Liquidating Trust;

(v)     open and maintain bank accounts in the name of the Liquidating Trust consistent with the provisions of Section 345 of the Bankruptcy Code, draw checks and drafts thereon by the sole signature of the Trustee, and terminate such accounts as the Trustee deems appropriate;

(w)     execute any documents and pleadings, and take any other actions related to, or in connection with, the liquidation of the Trust Assets and the exercise of the Trustee's powers granted herein;

(x)     review A/P/S Claims and Unsecured Claims against the Debtor, which have not been resolved by the Effective Date, to determine which should be Allowed A/P/S Claims and Allowed Unsecured Claims; and

(y)     take or refrain from taking any and all actions as may be necessary or helpful to accomplish the purposes of the Plan of Liquidation, including, without in any manner limiting any of the foregoing, dealing with the Trust Assets or any part or parts thereof in all other ways as would be lawful and prudent for any person or entity owning the same to deal therewith, whether similar to or different from the ways specified above, at any time or times hereafter, subject, in each case, to all restrictions and limitations contained in this Liquidating Trust; provided, however, that any such actions shall be limited to those that are consistent with maintaining the Liquidating Trust's status as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations.

4.6.    <u>Limitation of Trustee's Authority</u>.

(a)    Notwithstanding anything herein to the contrary, the Trustee shall not be authorized to and shall not engage in any trade or business. The Trustee shall take such actions consistent with the orderly liquidation of the Trust Assets as are required by applicable law, and such actions permitted under Article IV. Notwithstanding any other authority granted by Section 4.5, the Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations or inconsistent with Section 345 of the Bankruptcy Code.

(b)    Neither the Liquidating Trust nor the Trustee shall take any action that would result in the Liquidating Trust becoming subject to registration as an "investment company" pursuant to the Investment Company Act of 1940, as amended.

(c)    The Trustee shall not commingle any of the Trust Assets with its own property or the property of any other person.

4.7.    <u>Books and Records</u>. The Trustee shall maintain in respect of the Liquidating Trust and the holders of Beneficial Interests books and records relating to the Trust Assets and income of the Liquidating Trust and the payment of expenses of, and liabilities or claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained so as to account separately for the Claims Reserve Account and the Administration Reserve Account, each of its sub-accounts in lieu of maintaining separate bank accounts for the Claims Reserve Account and Administration Reserve Account and each of its sub-accounts. Except as provided in Article VII, nothing in this Trust Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for managing any payment or distribution out of the Trust Assets. A holder of a Beneficial Interest may obtain information relating to the management of the Trust Assets as long as access is reasonably exercised during normal business hours and is not detrimental to the Liquidating Trust. Nothing in this Trust Agreement provides any holder with a right to review, inspect, seek discovery of or otherwise obtain any information that is privileged or subject to a third party's rights of privacy or confidentiality.

4.8.    <u>Additional Powers</u>. Except as otherwise set forth in this Trust Agreement or in the Plan of Liquidation, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan of Liquidation, but without prior or further authorization, the Trustee may control and exercise authority over the Trust Assets and over the protection, conservation and disposition thereof. No person dealing with the Liquidating Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation or disposition of the Trust Assets.

4.9.    <u>Distributions; Withholding</u>. The Trustee shall distribute at least semi-annually to the Holders of Allowed General Unsecured Claims, provided that any such distribution is not unduly burdensome, in accordance with such holders' relative Beneficial Interests in the Liquidating Trust, all of its net income and the net proceeds from the sale of Trust Assets; provided, however, that any such distribution shall only be made if reserves necessary to fund the Claims

Reserve Account and Administration Reserve Account are maintained. In addition to such semi-annual distributions, the Trustee may make interim distributions to Holders of Allowed General Unsecured Claims, provided that such interim distributions are warranted and that the conditions for making distributions described in this Section 4.7 4.9are otherwise satisfied. The Trustee may withhold from amounts distributable to any person any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

4.10.  <u>Undeliverable Distributions</u>. Distributions to the Holders of Allowed Claims in Classes 1 and 2 of the Plan of Liquidation ("Claim Holder") shall be made by the Trustee (a) at the addresses set forth on the proofs of claim filed by such holders of claims (or at the last known addresses of such holders of claims if no proof of claim is filed or if the Debtor/Trustee have been notified in writing of a change of address), or (b) at the addresses set forth in any written notices of address changes delivered to the Trustee after the date of any related proof of claim. The Trustee is not obligated to make any effort to determine the correct address of any Claim Holder. If any distribution of Trust Assets to a Claim Holder is returned to the Trustee as undeliverable, no further distribution to such Claim Holder shall be made unless and until the Trustee is notified in writing of such Claim Holder's then-current address, at which time all missed distributions shall be made to such Claim Holder without interest. For purposes of this Trust Agreement, undeliverable distributions shall include checks sent to Claim Holders, which checks have not been cashed within six months following the date of issuance of such checks. Undeliverable distributions shall remain in the possession of the Trustee until the next distribution date that the relevant distribution becomes deliverable (in which event it shall be distributed to such Claim Holder). Any Claim Holder that does not assert a claim for an undeliverable distribution of Trust Assets within ninety (90) days after the distribution has been attempted to be made shall no longer have any claim to or interest of any kind or nature in Trust Assets and all title to and all Beneficial Interests related thereto shall revert to or remain in the Liquidating Trust and shall be redistributed to the remaining holders of Beneficial Interests in accordance with this Trust Agreement.

4.11.  <u>Winding Up Debtor</u>. The Trustee shall be deemed the Estate's representative pursuant to the Plan of Liquidation and shall complete the wind up of the Estate, including filing tax returns of the Debtor through the tax year ending with its dissolution on or about the Effective Date, settling or satisfying A/P/S Claims, and completing all other obligations under the Plan of Liquidation, the Confirmation Order, and this Trust Agreement. The Trustee shall wind up the remaining affairs of the Debtor, including the filing of all required tax returns including, without limitation, the handling of audits. All such services and obligations performed by the Trustee shall be performed at the sole cost and expense of the Liquidating Trust.

4.12.  <u>Compliance with Laws</u>. Any and all distributions of Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

## ARTICLE V
## THE TRUSTEE

5.1.  <u>Generally</u>. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Liquidating Trust and not otherwise. In

addition, the Trustee may pay its fees and expenses as Trustee from the Trust Assets as permitted by Section 5.5.

5.2.    Responsibilities of Trustee. The Trustee shall, in an expeditious and orderly manner, liquidate and convert to cash the Trust Assets, resolve any Disputed Claims not resolved by the Effective Date, make timely distributions to Holders of Allowed Claims and holders of the Beneficial Interests and not unduly prolong the duration of the Liquidating Trust. In so doing, the Trustee will exercise reasonable business judgment in liquidating the Trust Assets.

5.3.    Liability of Trustee; Indemnification. The Trustee, its respective members, designees or professionals, employees or any duly designated agent or representative of the Trustee, shall not be liable for the act or omission of any other member, designee, agent or representative of the Trustee nor shall the Trustee be liable for any error of judgment or any act or omission taken or omitted to be taken in its capacity as Trustee, other than for specific acts or omissions resulting from the Trustee's willful misconduct, gross negligence or fraud as determined by final order of a court with competent jurisdiction.  In exercising its duties under this Trust Agreement, the Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Trustee shall not be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and its determination not to do so shall not result in the imposition of liability on the Trustee unless such determination is based on willful misconduct, gross negligence, or fraud as determined by final order of a court with competent jurisdiction. The Liquidating Trust shall indemnify and hold harmless the Trustee (inclusive of all its employees, agents or affiliates) and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees including all costs of defense whatever the source, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan of Liquidation or the discharge of its duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, or fraud as determined by final order of a court with competent jurisdiction. Persons dealing with the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trustee to such person in carrying out the terms of this Trust Agreement, and the Trustee shall not have any personal obligation to satisfy any such liability.

5.4.    Reliance by Trustee. Except as otherwise provided in Section 5.3, the Trustee may rely, and shall be fully protected in acting, or refraining from acting, on any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document ("Document") that the Trustee has no reason to believe to be other than genuine and to have been signed or presented by the proper party or parties or, in the case of facsimiles or e-mails, to have been sent by the proper party or parties, and the Trustee may rely as to the truth of the statements

and correctness of the opinions expressed in any Document. The Trustee may consult with counsel, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by the Trustee in accordance therewith.

5.5.    Expense Reimbursement and Compensation.

(a)    The Trust Assets shall be subject to the claims of the Trustee, and the Trustee shall be entitled to reimburse itself out of any available cash in the Liquidating Trust, for its actual out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the Trustee may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the Trustee under this Trust Agreement. As compensation for the performance of its duties, the Trustee shall be compensated in accordance with the terms set forth in <u>Schedule 1</u> attached hereto, at the sole cost and expense of the Liquidating Trust.

5.6.    Insurance; Bond. The Trustee may obtain insurance coverage with respect to the liabilities and obligations of the Trustee under this Trust Agreement (in the form of an errors and omissions policy or otherwise). The Trustee shall serve with a bond, the cost and expense of which shall be paid by the Liquidating Trust. The Trustee may, but is not obligated to, procure property and casualty insurance or other insurance for the benefit of the Trust, if, in the sole judgment of the Trustee, such insurance is justified by any good business reason due to the materiality of the exposure combined with the substantial nature of the risk.

5.7.    Confidentiality. The Trustee shall, during the period that it serves as Trustee under this Trust Agreement and for a period of twelve (12) months following the earlier of the termination of this Trust Agreement or its removal or resignation hereunder, hold strictly' confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Assets relates or of which it has become aware in its capacity as Trustee.

## ARTICLE VI
## SUCCESSOR TRUSTEE

6.1.    Removal. The Trustee may resign as Trustee upon ten days' notice to Beneficiaries. The Trustee may be removed at any time with or without cause by the Majority Beneficiaries, with such resignation or removal to become effective only upon the appointment of a successor trustee by the Majority Beneficiaries. If no such successor shall have been appointed within thirty (30) days of notice of resignation or removal, the Trustee, any Beneficiary or any other interested party may seek a court order appointing a successor trustee. Upon appointment, such successor trustee shall succeed to the rights, powers, and duties of Trustee, and the rights, powers, and duties of the former trustee as Trustee shall be terminated, without any other or further act or deed on the part of such former trustee, except that the former trustee shall deliver all Trust Assets, books, and records then in its possession to such successor trustee. After resignation or removal as Trustee, the provisions of this Agreement shall inure to the former trustee's benefit and continue to be binding upon the former trustee as to any acts or omissions while it was Trustee.

6.2.    <u>Continuance of the Liquidating Trust</u>. The death, incapacity, resignation, or removal of the Trustee shall not operate to terminate the Liquidating Trust created by this Trust Agreement or revoke any existing agency (other than the agency of the former Trustee as Trustee) created pursuant to the terms of this Trust Agreement or invalidate any action taken by the Trustee.

**ARTICLE VII**
**REPORTS TO HOLDERS OF BENEFICIAL INTERESTS**

7.1.    <u>Securities Laws and Other Reports to Holders of Beneficial Interests</u>.

(a)    <u>Securities Laws</u>. Under section 1145 of the Bankruptcy Code, the issuance of Beneficial Interests under the Plan of Liquidation shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities. If the Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting or other requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Trustee shall take any and all actions to comply with, or qualify for exemption from, such reporting or other requirements and to file periodic reports with the Securities and Exchange Commission as necessary.

(b)    <u>Quarterly Reports</u>. Beginning with the first full month following the first full quarter after the Effective Date, and as soon as practicable upon commencement of the Liquidating Trust, the Trustee shall prepare and file with the Bankruptcy Court on a timely basis, and shall serve on the U.S. Trustee the quarterly post-confirmation reports required by Bankruptcy Code Section 1106(a)(7) and U.S. Trustee Guidelines, and a report listing the Trust Assets disposed of during the reporting period. Such quarterly reports shall be served and filed until such time as the Trust has been terminated.

(c)    <u>Federal Income Tax</u>. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Trustee), the Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

(d)    <u>Other Reporting</u>. The Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Liquidating Trust that are required by any governmental authority.

(e)    <u>Tax Reporting</u>. Promptly following the end of each calendar year, the Trustee shall submit to the holders of Beneficial Interests a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit. Allocations of Liquidating Trust taxable income shall be, determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the Beneficial Interests (treating any holder of a Disputed Claim, for this purpose, as a current holder of a Beneficial Interest in the Liquidating Trust entitled to distributions), taking into account

13

all prior and concurrent distributions from the Liquidating Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Trust Assets. For this purpose, the tax book value of the Trust Assets shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidating Trust, adjusted in either case in accordance with tax accounting principles prescribed by the Internal Revenue Code of 1986, as amended, the Treasury Regulations and other applicable administrative and judicial authorities and pronouncements.

## ARTICLE VIII
## TERMINATION OF LIQUIDATING TRUST

8.1. <u>Termination of Liquidating Trust</u>. The Liquidating Trust will terminate on the earlier of: (a) its liquidation, administration and distribution of the Trust Assets in accordance with the terms of this Trust Agreement and the Plan of Liquidation, and its full performance of all other duties and functions set forth herein or in the Plan of Liquidation; and (b) thirty (30) months after the Effective Date. Notwithstanding the foregoing, multiple fixed term extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months before the expiration of the term of the Liquidating Trust and each extended term. The aggregate of all such extensions shall not exceed one (1) year. Prior to and upon termination of the Liquidating Trust, the Trust Assets will be distributed to the Beneficiaries in accordance with the Plan of Liquidation. After the winding up of the Liquidating Trust's affairs by the Trustee as provided for herein, the Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Trust of Liquidating Trust to be filed with the office of the Secretary of State of the State of Washington in accordance with the Act.

## ARTICLE IX
## AMENDMENT AND WAIVER

9.1. <u>Amendment and Waiver</u>. Any substantive provision of this Trust Agreement may be amended or waived by the Trustee, with the prior approval of the Majority Beneficiaries, upon notice to the holders of Beneficial Interests. Notwithstanding this Section 9.1, any amendments to this Trust Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with the Plan of Liquidation, Section 301.7701-4(d) of the Treasury Regulations. Notwithstanding this Section 9.1 or any other provision of the Trust Agreement, nothing in the Trust Agreement or its execution or its modification shall modify or give any party in interest the right to modify or in any way limit the Debtor's rights with respect to the services the Trustee shall provide pursuant to the Trust Agreement.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

10.1. <u>Intention of Parties to Establish Liquidating Trust</u>. This Trust Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided - by law, shall be governed and construed in all respects as such a trust and any ambiguity herein

Case 16-12848-TWD    Doc 74-1    Filed 10/14/16    Ent. 10/14/16 15:18:19    Pg. 54 of 58

shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

10.2. <u>Preservation of Privilege and Defenses</u>. In connection with the rights, claims, and Litigation that constitute the Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Trustee and its representatives, and the Debtor and the Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

10.3. <u>Cooperation and Further Assurances of the Debtor</u>. The Debtor shall, upon reasonable request of the Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Trustee any portion of the Trust Assets intended to be conveyed in the form and manner provided for in the Plan of Liquidation and to vest in the Trustee the powers, instructions, or funds in trust hereunder. The Debtor shall also, upon reasonable request of the Trustee and at the expense of the Liquidating Trust, provide additional documentation or information necessary to resolve Claims. The Debtor, for itself and any predecessor or successor entities, hereby disclaim and waive any and all rights to any reversionary interests in any of the Trust Assets. The Debtor shall provide the Trustee with copies of such of their books and records as the Trustee shall reasonably require for the purpose of performing its duties and exercising its powers hereunder. As soon as practicable following the Effective Date, the Debtor shall deliver to the Trustee a list of the Beneficiaries as of the applicable Record Date, setting forth (i) the addresses listed on the applicable proofs of claim (or at the last known addresses if no proof of claim is filed or if the Debtor have been notified in writing of a change of address), and (ii) the respective Allowed Claims amounts and numbers of each of the Beneficiaries (or if not yet allowed, the Claim number and amounts of each of the Creditor Trust Beneficiaries).

10.4. <u>Laws as to Construction</u>. This Trust Agreement shall be governed and construed in accordance with the laws of the State of Washington, without giving effect to rules governing the conflict of law.

10.5. <u>Severability</u>. If any provision of this Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

10.6. <u>Notices</u>. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended:

If to the Debtor:

Keller Rohrback L.L.P.
Attention: Thomas A. Sterken
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone:     (206) 623-1900
Facsimile:     (206) 623-3384

with a copy to:

Oles Morrison Rinker & Baker, LLP
Attention: Jeffrey L. Smoot
701 Pike Street, Suite 1700
Seattle, WA 98101
Telephone:     (206) 623-3427
Facsimile:     (206) 682-6234

If to the Liquidating Trust:

Liquidating Trust, c/o Pacific Realty Advisors, LLC, as Liquidating Trustee
Attention: John P. Rader
411 University Street, Suite 1200
Seattle, WA  98101
Telephone:     _____
Facsimile:     _____

with copies to:

Bush Kornfeld LLP
Attn: Katy Samiljan
601 Union Street, Suite 5000
Seattle, WA  98101
Telephone:     (206) 292-2110
Facsimile:     (206) 292-2104

10.7.   <u>Headings</u>. The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof

10.8.   <u>Relationship to the Plan of Liquidation</u>. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan of Liquidation. This Trust Agreement, together with the Plan of Liquidation and related instruments expressly referred to herein and which are attached as Exhibits hereto, shall be construed as integrated and complimentary of each other and intended to carry out the terms of the Plan of Liquidation. To that end, the Trustee shall have full power and authority, except as otherwise set forth in this Trust Agreement or the Plan of

16

Liquidation, to take any action consistent with the purpose and provisions of the Plan of Liquidation, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan of Liquidation and this Trust Agreement. If any provisions of this Trust Agreement are found to be inconsistent with the provisions of the Plan of Liquidation, the provisions of the Plan of Liquidation shall control.

10.9. <u>Exclusive Jurisdiction and Standing</u>. As provided in Article XIII of the Plan of Liquidation, the Bankruptcy Court has exclusive jurisdiction over all controversies, suits and disputes that may arise under this Trust Agreement. The Trustee shall have standing in any such proceeding to enforce the rights of the Liquidating Trust or of the Beneficiaries arising under this Trust Agreement or the Plan of Liquidation. Any and all claims and disputes, if any, asserted against the Trustee are subject to the exclusive jurisdiction of the Bankruptcy Court.

<u>//</u>

<u>//</u>

IN WITNESS WHEREOF, the Debtor and the Trustee have either executed or acknowledged this Trust Agreement or caused it to be executed or acknowledged on their behalf by their duly authorized officers all as of the date first above written.

Debtor and Debtor in Possession:

WASHINGTON FIRST FINANCIAL
GROUP, INC., Debtor-In-Possession


By: _____
    Elizabeth Huang, President

The Liquidating Trustee hereby accepts the Liquidating Trust imposed by this Trust Agreement upon the terms and conditions set forth herein:

PACIFIC REALTY ADVISORS LLC


By:_____
John P. Rader, Its Member
As Liquidating Trustee

GSB:7278392.2 [30351.03000]

4847-8675-7178, v. 2

18